```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
MARINA SHRON, on behalf of herself and
similarly-situated others,

                        Plaintiff,

        -against-

LENDINGCLUB CORPORATION,

                        Defendant.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _7/13/2020_

19 Civ. 6718 (AT)

**<u>ORDER</u>**

ANALISA TORRES, District Judge:

Plaintiff, Marina Shron, brings this action on behalf of herself and others similarly situated, against Defendant, LendingClub Corporation ("LendingClub"), asserting claims under New York General Business Law §§ 349 and 350, and the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, as well as breach of contract, fraud, and unjust enrichment. *See* Compl. ¶¶ 36–80, ECF No. 1. Now before the Court is Defendant's motion to compel arbitration pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, and stay this action pending completion of arbitration. ECF No. 12. For the reasons stated below, the motion is DENIED.

## BACKGROUND

The following facts are taken from the complaint and the declarations and exhibits submitted in connection with Defendant's motion. *See Ostreicher v. TransUnion, LLC*, No. 19 Civ. 8174, 2020 WL 3414633, at *1 n.2 (S.D.N.Y. June 22, 2020) ("It is proper (and in fact necessary) to consider extrinsic evidence when faced with a motion to compel arbitration." (internal quotation marks, citation, and alterations omitted)).

Defendant is a corporation that facilitates the issuance of personal loans through its website. Compl. ¶ 9; Hines Decl. ¶ 1, ECF No. 14. On August 10, 2018, Plaintiff, seeking to pay down credit card debt, applied for a loan using Defendant's online platform. Compl. ¶¶ 6,

33.  On August 20, 2018, Plaintiff accepted a $35,000 personal loan offer from Defendant, with a 60-month loan term and a 22.35% fixed interest rate (the "2018 Loan").  *Id.* ¶ 33.  Plaintiff alleges that, despite the representation that there would be "no hidden fees," Defendant charged her a $2,100 origination fee and deducted that amount from the loan, such that Plaintiff received only $32,900 of the offered $35,000 loan amount.  *Id.*  Defendant also charged her interest rates exceeding 25%, which surpassed the interest rates of her credit cards, defeating the purpose of the loan.  *Id.*

Though Plaintiff previously obtained a loan through Defendant's website in December 2015 (the "2015 Loan"), Hines Decl. ¶ 3, she brings suit based on events arising from the 2018 Loan, *see* Compl. ¶ 33.  The parties' present dispute is whether, in obtaining either the 2015 or 2018 Loans, Plaintiff assented to contractual provisions that compel arbitration of the claims in her complaint.

## DISCUSSION

I.  Legal Standard

In ruling on a petition to compel arbitration under the FAA, a court must determine whether:  (1) a valid agreement to arbitrate exists, and (2) the agreement encompasses the claims at issue.  *See JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004).  "It has long been settled that arbitration is a matter of contract and that, therefore, a party cannot be compelled to submit to arbitration any matter that party has not agreed to arbitrate."  *Software for Moving, Inc. v. La Rosa Del Monte Exp., Inc.*, No. 08 Civ. 986, 2009 WL 1788054, at *7 (S.D.N.Y. June 23, 2009), *aff'd sub nom. Software for Moving, Inc. v. La Rosa Del Monte Express, Inc.*, 419 F. App'x 41 (2d Cir. 2011) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir.

2003)). "Whether a valid agreement exists to submit certain issues to binding arbitration is determined by state law principles governing the formation of contracts." *Software for Moving*, 2009 WL 1788054, at *7 (citations omitted). If a valid agreement to arbitrate exists, the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

"Courts deciding motions to compel [arbitration] apply a standard similar to that applicable for a motion for summary judgment." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017) (internal quotation marks and citation omitted). Thus, the Court may "consider[ ] all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits." *Id.* (internal quotation marks, citation, and alterations omitted).

II.  Analysis

   A. Existence of a Contract

The parties dispute whether an agreement to arbitrate exists. Defendant argues that, in applying for the 2015 Loan, Plaintiff entered into a "[b]orrower [m]embership [a]greement" and a "[l]oan [a]greement" with Defendant, and that such agreements require her to arbitrate any claims against Defendant arising from the 2015 Loan and any loan obtained through Defendant's platform thereafter, including the 2018 Loan. Def. Mem. at 3–6, ECF No. 11. Defendant further contends that when Plaintiff applied for the 2018 Loan, she again agreed to a "[b]orrower [a]greement" requiring arbitration (collectively, with the 2015 Loan's "[b]orrower [m]embership [a]greement" and "[l]oan [a]greement," the "Arbitration Agreements"). *Id.* at 6–7. Plaintiff argues, however, that Defendant has not proven by a preponderance of the evidence that she

actually entered into those agreements, because the copies of the agreements Defendant submitted in this case lack personal identifying information—such as Plaintiff's name, loan number, or signature—that would indicate that Plaintiff actually read and agreed to such terms and establish the "manifestation of mutual assent" required for the formation of a contract. Pl. Opp. at 3–4 (internal quotation marks and citation omitted), ECF No. 19.

As a threshold matter, therefore, the Court must determine whether the parties entered into the Arbitration Agreements.

### 1. Choice of Law

Even before reaching the question of whether, under state law, a valid agreement was reached to arbitrate Plaintiff's claims, the Court must determine which state's law to apply. Plaintiff relies on New York law. Pl. Opp. at 4. Defendant relies on Delaware and Utah law, noting that the contracts governing the 2015 and 2018 Loans indicate that such law applies. Def. Reply at 3, ECF No. 21. Defendant's argument, however, misses the mark, because the Court must first determine whether the parties even entered into those agreements. *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119, 126–27 (2d Cir. 2012) ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established.").

In deciding which state's law is proper to apply, the Court looks first to the choice-of-law doctrine of the forum state, New York.[1] Under New York's choice-of-law rules, in determining

---

[1] Federal choice-of-law rules are usually appropriate in cases invoking federal question jurisdiction, as this case does. *See, e.g., Wells Fargo Asia Ltd. v. Citibank, N.A.*, 936 F.2d 723, 726 (2d Cir. 1991) ("In federal question cases, we are directed to apply a federal common law choice of law rule to determine which jurisdiction's substantive law should apply."). However, in a case involving both federal and state law issues—such as this one—the Second Circuit has stated that it "discern[s] no significant difference between the applicable federal and New York choice-of-law rules. The federal common law choice-of-law rule is to apply the law of the jurisdiction having the greatest interest in the litigation." *In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 350 (2d Cir. 1992). The federal choice-of-law formulation thus mirrors the New York "center of gravity" test, which focuses on which state has the strongest connection to the litigation. Thus, the Court's reliance on New York's choice-of-law rules

4

which state's law to apply to a contract dispute "the court evaluates the 'center of gravity' or 'grouping of contacts,' with the purpose of establishing which state has 'the most significant relationship to the transaction and the parties.'" *Fieger v. Pitney Bowes Credit Corp.*, 251 F.3d 386, 394 (2d Cir. 2001) (quoting *Zurich Ins. Co. v. Shearson Lehman Hutton, Inc.*, 642 N.E.2d 1065 (1994); *Restatement (Second) of Conflict of Laws* § 188(1)).

Here, Plaintiff is a New York citizen and Defendant is a corporation domiciled in California and Delaware. Compl. ¶¶ 2, 4. All or a substantial part of the alleged events or omissions giving rise to the claims occurred in New York. *See id.* ¶¶ 3–4. Plaintiff disputes whether, while in New York, she actually saw and read the Arbitration Agreements to which Defendant claims she consented. *Cf. id.* ¶¶ 4, 15. The Court concludes, therefore, that the "center of gravity" of the contract formation dispute is in New York, and the Court will apply New York law to the question of whether the parties entered into the Arbitration Agreements. *See, e.g.*, *Kutluca v. PQ New York Inc.*, 266 F. Supp. 3d 691, 700 n.13 (S.D.N.Y. 2017) (applying New York law where, among other things, all or a substantial part of the alleged events or omissions giving rise to the claims occurred in New York).

2. Existence of an Arbitration Agreement

Under New York law, the party seeking arbitration bears the burden of proving that a valid arbitration agreement exists by a preponderance of the evidence. *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993); *see also Am. Centennial Ins. Co. v. Williams*, 649 N.Y.S.2d 190, 191 (2d Dep't 1996). To create a binding contract, there must be a meeting of the minds. *Highland HC, LLC v. Scott*, 978 N.Y.S. 2d 302, 306 (2d Dep't 2014). "This is because an enforceable contract requires mutual assent to essential

---

instead of the federal choice-of-law rules may be a distinction without a difference, because the two sets of rules "invoke similar considerations." *Id.* at 350–51 (internal quotation marks, citation, and alteration omitted).

terms and conditions thereof." *Dreyfuss v. Etelecare Glob. Sols.-U.S. Inc.*, 349 F. App'x 551, 554 (2d Cir. 2009) (citation omitted).

Defendant contends that the 2015 and 2018 Loans required Plaintiff to agree to the Arbitration Agreements, each containing arbitration provisions. Def. Mem. at 4–7. In support, Defendant relies on the declaration of William Hines, a senior manager of Member Support at LendingClub, made on the basis of his personal knowledge of the company's records and practices, as well as review of Defendant's records concerning Plaintiff. Hines Decl. ¶¶ 1–3. The Hines declaration describes the process that website customers used to submit a loan application on Defendant's online platform. In order to complete the process, applicants were required to check a box and click a button indicating acceptance of, among other things, a "[b]orrower [m]embership [a]greement" and a "[l]oan [a]greement" for the 2015 Loan, and a "[b]orrower [a]greement" for the 2018 Loan. *Id.* ¶¶ 4–16. According to Hines, if Plaintiff had declined to check the box or click the button accepting the terms, the online platform would not have permitted Plaintiff to proceed to the next screen. *Id.* ¶ 13. The declaration also authenticates various exhibits of sample webpages containing template language and website interfaces. *Id.* ¶¶ 4–5, 7, 9–10, 12; *see* ECF No. 14-1; *see also Trustees of the New York City Dist. Council of Carpenters Pension Fund Welfare Fund, Annuity Fund v. Ne. Serv. Grp. Ltd.*, No. 12 Civ. 2010, 2012 WL 2861337, at *3 (S.D.N.Y. July 9, 2012) ("Proper authentication requires submission with an affidavit or other sworn statement attesting to what the [document] actually is and whether it is a true and correct copy of what it purports to be.").

In response, Plaintiff relies on her own declaration, which states that she never saw a "[b]orrower [m]embership [a]greement," a "[b]orrower [a]greement," or a "[l]oan [a]greement" in the course of applying for her loans, and never read any provisions to arbitrate. Shron Decl.

¶¶ 11–19, ECF No. 19-1.  Plaintiff also argues that the Hines declaration only discusses what a typical consumer would need to comply with to effectuate the loan application, but does not reflect her specific experience when applying for the loans.  Pl. Opp. at 13–14.

The Second Circuit has repeatedly stated that where, as here, "[a] party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of [her] claim in order to precipitate . . . trial" on that issue.  *DuBois v. Macy's E. Inc.*, 338 F. App'x 32, 33 (2d Cir. 2009) (internal quotation marks and citation omitted).  Moreover, a plaintiff may not rely on a self-serving declaration to create a justiciable issue where none otherwise exists.  *See BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. Oct. 17, 2013) (noting that a "self-serving" summary judgment affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence).

Contrary to Defendant's contentions, however, Plaintiff's declaration cannot be dismissed as self-serving, because Plaintiff's claims—that she "was not given notice of the purported arbitration agreement(s) at the time [she] accepted the personal loan(s)," and that she "was never shown" and "never saw" such contracts—raise an important question of notice.  Shron Decl. ¶¶ 10–19.  Defendant, who bears the ultimate burden of proving the existence of an agreement to arbitrate, must show that Plaintiff had sufficient notice of the arbitration provisions to establish a meeting of the minds.  *See Progressive Cas. Ins. Co.*, 991 F.2d at 46.  Thus, even assuming that Plaintiff checked off boxes and clicked on buttons accepting the Arbitration Agreements, the Court must examine whether such steps established mutual assent.

Because Plaintiff declares she was not aware of the Arbitration Agreements or their terms, Shron Decl. ¶¶ 10–19, and Defendant does not provide any evidence that Plaintiff actually saw or read those provisions, the Court concludes that Plaintiff did not receive actual notice.  *See*

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 120 (2d Cir. 2012). Therefore, the Court must determine whether Plaintiff was placed on inquiry notice of the arbitration requirements.

"Where there is no evidence that the offeree had actual notice of the terms of the agreement," the Court must examine whether "a reasonably prudent user would be on inquiry notice of the terms." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–75 (2d Cir. 2017); *see id.* at 76 (examining whether plaintiff received inquiry notice because plaintiff "attest[ed] that he was not on actual notice of the hyperlink to the [t]erms of [s]ervice or the arbitration provision itself" and defendants failed to provide evidence of actual notice). "Whether a reasonably prudent user would be on inquiry notice turns on the clarity and conspicuousness of arbitration terms; in the context of web-based contracts . . . clarity and conspicuousness are a function of the design and content of the relevant interface." *Id.* at 75 (internal quotation marks, citation, and alterations omitted). Thus, "only if the undisputed facts establish that there is reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms will [a court] find that a contract has been formed." *Id.* (internal quotation marks and citation omitted). The Court thus looks to the specific terms, in the context of Defendant's website, that were purportedly presented to Plaintiff when she applied for the 2015 and 2018 Loans.

The Hines declaration includes a screenshot of a portion of Defendant's online platform that an individual applying for a loan in 2015 would have seen:

> Clicking the box below constitutes your electronic signature and acceptance of:
> ☐ the Loan Agreement, the Borrower Membership Agreement and the Credit Score Notice.
>
> **Next ▶**

Hines Decl. ¶ 6.

And in August 2018, a loan applicant would have seen the following:

> Clicking the box below constitutes your electronic signature and acceptance of:
>
> ☐ The Borrower Agreement and the Credit Score Notice
>
> [Next]

*Id.* ¶ 11.

The above images reflect what are known as "clickwrap" agreements. *See Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 465 (S.D.N.Y. 2017) ("*Clickwrap* refers to the assent process by which a user must click 'I agree,' but not necessarily view the contract to which she is assenting." (citation omitted)); *see also* Def. Mem. at 9 (referring to the disputed agreements in this case as clickwrap agreements); Pl. Opp. at 6, 8 (same).

On a motion to compel arbitration, a court looks to whether "the notice of the arbitration provision was reasonably conspicuous and manifestation of assent unambiguous as a matter of law." *Meyer*, 868 F.3d at 76. "[C]ourts scrutinize the circumstances surrounding an alleged assent to a clickwrap agreement, which does not require the user to review the terms of the proposed agreement." *Applebaum*, 263 F. Supp. 3d at 465.

The Court concludes that Defendant's interface does not provide to a consumer inquiry notice of the arbitration terms contained within the Arbitration Agreements. A clickwrap agreement that does not indicate the legal significance of its provisions fails to place a user on inquiry notice. *See, e.g.*, *Applebaum*, 263 F. Supp. 3d at 468 (holding that plaintiff was not bound by the arbitration provision in a contract where a clickwrap agreement did not provide inquiry notice, as a "reasonable consumer may have understood that the consumer had agreed to

9

something, but not to the lengthy February 8, 2016 [t]erms of [s]ervice"). "Where a website specifically states that clicking means one thing, that click does not bind users to something else." *Id.* (internal quotation marks, citation, and alterations omitted).

Here, Defendant's website from 2015 and August 2018, as reproduced in the screenshots, stated that by checking the box and clicking "Next," the user indicated "acceptance" of a "Loan Agreement," a "Borrower Membership Agreement," and a "Borrower Agreement." Hines Decl. ¶¶ 6, 11. In the context of the interface, a loan applicant could reasonably have believed that such agreements reflected her consent to borrowing the loan amount applied for—as suggested by the words "[l]oan" and "[b]orrower"—but not that such agreements will affect the scope of her legal rights and remedies. *See Applebaum*, 263 F. Supp. 3d at 468 (noting that "[t]here is . . . no reason to believe that '[t]erms of [s]ervice' is self-defining for reasonable consumers," so as to "clearly inform a user that she is subjecting herself to a one-sided contract that purports to modify her basic legal rights and remedies").

Although Defendant asserts that its website required consumers to check off the boxes indicating acceptance of the terms within the hyperlinked documents before proceeding to the next page, *see* Def. Mem. at 9, this technical requirement is not tantamount to establishing that Plaintiff was on inquiry notice because the language on the page does not alert the user to the legal significance of proceeding with that step. *See Applebaum*, 263 F. Supp. 3d at 468 ("[T]his limitation would not have alerted a consumer to the significance of the [b]ox, especially given that the word '[n]ext' implied that there were additional steps in the registration process.").

The Court finds that neither the 2015 nor the 2018 Loan application processes provided the requisite inquiry notice to Plaintiff of the terms contained within the Arbitration Agreements such that an enforceable contract was formed. *See Scotti v. Tough Mudder Inc.*, 97 N.Y.S.3d

10

825, 834 (N.Y. Sup. Ct. 2019) ("When contractual terms as significant as the right to sue in court are accessible only via a small and distant hyperlink with text about agreement thereto presented even more obscurely, there is a genuine risk that a fundamental principle of contract formation will be left in the dust: the requirement for a manifestation of mutual assent." (internal quotation marks, citation, and alterations omitted)).  Defendant has, therefore, failed to carry its burden of showing by a preponderance of the evidence that a valid agreement to arbitrate exists.  *See id.* at 856.

Accordingly, Defendant's motion to compel arbitration is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's motion to compel arbitration and stay the action is DENIED.

The parties shall appear for a telephonic initial pretrial conference on **September 16, 2020**, at **11:20 a.m.**  The parties are directed to dial 888-398-2342 or 215-861-0674, and enter access code 5598827.  By **September 9, 2020**, the parties shall submit their joint letter and proposed case management plan.  *See* ECF No. 5.

The Clerk of Court is directed to terminate the motion at ECF No. 11.

SO ORDERED.

Dated: July 13, 2020
       New York, New York

_____
ANALISA TORRES
United States District Judge